[706 NYS2d 8]

KEVIN BARBIERI, Respondent, v MOUNT SINAI HOSPITAL, Appellant and Third-Party Plaintiff-Appellant. UNIVERSAL DRYWALL SERVICES, INC., Third-Party Defendant-Respondent.

First Department, March 14, 2000

2

APPEARANCES OF COUNSEL

*Steven J. Ahmuty, Jr.,* of counsel (*Shaub, Ahmuty, Citrin & Spratt, L. L. P.,* attorneys), for defendant and third-party plaintiff-appellant.

*Robert C. Baxter* of counsel; *Arthur J. Smith* and *Anne V. Malone* on the brief (*Baxter M. Smith,* attorney), for third-party defendant-respondent.

## OPINION OF THE COURT

TOM, J.

The principal issue presented is whether plaintiff sustained a "grave injury" as defined in Workers' Compensation Law § 11.

Plaintiff was employed by third-party defendant Universal Drywall Services as a carpenter. Universal was hired by defendant and third-party plaintiff Mount Sinai Hospital to install rigid board insulation to an interior block wall in the ceiling above the Fifth Avenue entrance to its Guggenheim Pavilion. Under the work order, Universal agreed with Mount Sinai to be responsible "for providing all necessary scaffolding, platforms to walk in the ceiling and the required protection needed to complete this work." Plaintiff, while working at the site, fell through an unguarded and unmarked access panel underneath old insulation and debris in the workers' walking surface in the ceiling. He landed on the floor approximately 30 feet below.

Plaintiff commenced an action against Mount Sinai under Labor Law §§ 200 and 240 (1) and § 241 (6), alleging in the complaint numerous "severe and permanently disabling injuries," such as various fractures, nerve damages, tendon damage and "neurological injuries and scarring." The bill of particulars expanded the descriptions of the injuries to include facial scars, concussion, arthritis, amnesia and other memory dysfunctions and a brain lesion, allegedly resulting in permanent disability.

Mount Sinai commenced a third-party action sounding in contribution and indemnification against Universal, alleging the negligent supervision and protection of Universal's employee. Universal asserted as an affirmative defense that contribution and indemnification were barred insofar as plaintiff had not suffered a "grave injury" under Workers' Compensation Law § 11, the main issue presented for our review. That statute now limits an employer's liability in contribution or indemnification to third parties, in this case Mount Sinai, which are sued by the employee plaintiff, to occasions when the employee suffers a "grave injury."

After completion of discovery, with note of issue and certificate of readiness filed, plaintiff sought summary judgment

against Mount Sinai under Labor Law § 240, and Mount Sinai cross-moved for summary judgment on its contribution and indemnification claims against Universal. Universal then cross-moved for summary judgment dismissing the third-party complaint, on the basis that the requirement of grave injury, as contemplated under the Workers' Compensation Law, was not established.

The IAS Court granted plaintiff's motion, finding by unrefuted evidence that adequate safety devices were not provided and hence Mount Sinai, as premises owner, was strictly liable to plaintiff. The court, denying Mount Sinai's motion and granting Universal's motion, then dismissed the third-party complaint pursuant to *Majewski v Broadalbin-Perth Cent. School Dist.* (91 NY2d 577), finding that the requirement that plaintiff had suffered a grave injury as defined in Workers' Compensation Law § 11, the predicate for any third-party action under these circumstances, was not satisfied. We agree.

Section 10 of the Workers' Compensation Law requires employers to secure compensation for employees who suffer disability or death from injuries arising out of their employment, with certain exceptions not relevant herein. This provision is a means of establishing a no-fault insurance regime protecting employees during their periods of disability arising from work-related injuries (*cf., Matter of Dorosz v Green & Seifter*, 92 NY2d 672). For employers, this quasi-contractual financial obligation was intended simply to have been part of the cost of doing business (*Westchester Light. Co. v Westchester County Small Estates Corp.*, 278 NY 175). Labor Law § 240 claims have long been subsumed into the exclusive protections afforded by the Workers' Compensation Law (*see, Pagano v Colonial Sand & Gravel Co.*, 75 AD2d 578). The remedy to the employee as against the employer is limited to filing a workers' compensation claim (*Cronin v Perry*, 244 AD2d 448) unless the employer failed to secure compensation insurance (§ 11). For employees, the statute ensures a swift and sure source of benefits in exchange for the loss of a common-law tort claim for which benefits, potentially, might be greater (*Maas v Cornell Univ.*, 253 AD2d 1, *affd* 94 NY2d 87).

Section 11, as amended in 1996, allows for an alternative remedy under limited circumstances. Although making clear that the liability of the employer under section 10 is "exclusive and in place of any other liability whatsoever, to such employee," the injured employee's maintenance of a tort action against a third party is not thereby barred. However, section

11 now bars actions in contribution or indemnification by third parties against the employer except under carefully circumscribed circumstances. Section 11 states that such third-party liability is barred "unless such third person proves through competent medical evidence that such employee has sustained a 'grave injury' [quote marks in original] which shall mean only one or more of the following: death, permanent and total loss of use or amputation of an arm, leg, hand or foot, loss of multiple fingers, loss of multiple toes, paraplegia or quadriplegia, total and permanent blindness, total and permanent deafness, loss of nose, loss of ear, *permanent and severe facial disfigurement*, loss of an index finger or an acquired injury to the brain caused by an external physical force resulting in *permanent total disability*" (italics added).

Mount Sinai relies on the latter two categories, facial disfigurement and brain injuries, equating them with plaintiff's alleged facial scarring and cognitive injuries, to keep the employer in the action on contribution and common-law indemnification theories, at least to the extent of creating a factual controversy regarding whether the injuries pleaded satisfy the statutory language.

The main issue presented for our review is whether plaintiff's injuries, as pleaded and as amplified by the bill of particulars and supported by some evidence, constitute "grave injuries" under the statute. If not, Mount Sinai's action against Universal is barred.

In *Majewski*, the Court of Appeals noted the legislative purpose underlying the Omnibus Workers' Compensation Reform Act of 1996, amending section 11 of the Workers' Compensation Law, to effectively repeal the doctrine of *Dole v Dow Chem. Co.* (30 NY2d 143). As the Court of Appeals noted, "[t]hat intention was repeatedly expressed by all sides during the legislative debates and is included in the official statement of intent" (*Majewski v Broadalbin-Perth Cent. School Dist.*, *supra*, at 584, citing L 1996, ch 635, § 1). *Dole* had allowed employees to circumvent the ostensible exclusivity of the Workers' Compensation Law as a remedy against employers for workplace injuries by allowing injured employees to sue negligent third parties who then could seek recovery from employers. With the amendment to section 11, the Legislature clearly has retaken the initiative, effectively eviscerating *Dole*, except under its narrow, legislatively mandated, circumstances (*see*, Governor's Approval Mem for L 1996, ch 635, 1996 McKinney's Session Laws of NY, at 1912). As noted, those circumstances

are now limited to actions in which the third party "proves through competent medical evidence" that the employee suffered a " 'grave injury' " (§ 11).

The point of the statutory amendment was to abolish such third-party actions and to restore a regime wherein workers' compensation was the exclusive remedy (Assembly Mem in support, 1996 McKinney's Session Laws of NY, at 2562) in order to reduce insurance premiums and the attendant cost of doing business in the State (L 1996, ch 635, § 1; Assembly Mem in Support, 1996 McKinney's Session Laws of NY, at 2565; Report of NY Assembly Majority Task Force on Workers' Compensation Reform, at 2). A report issued in conjunction with the Act by the Assembly Majority Task Force on Workers' Compensation Reform indicated that six consecutive years of significant increases in compensation premiums during the late 1980's and early 1990's "cost thousands of jobs in New York, particularly in small business" and that a speedy rate reduction was seen to be necessary to "make New York companies competitive with other states" (Report of Task Force, *id.*, at 3). Legislative memoranda also make clear the goal that the "exclusive remedy, a cornerstone of the Workers' Compensation Law, [be] restored and reinforced under this bill by prohibiting third parties * * * from asserting Dole, or third-party, suits against the employer. This repeal of Dole will reduce workers' compensation premium costs without diminishing employees' legal rights against responsible third parties" (Assembly Mem in Support, *op. cit.*, at 2565). The Legislature now explicitly requires that the Act be "interpreted and implemented in the spirit in which [the Workers' Compensation Law] was first enacted," that a system be created "which protects injured workers and delivers wage replacement benefits in a fair, equitable and efficient manner, while reducing time-consuming bureaucratic delays, and repealing Dole liability *except in cases of grave injury*" (L 1996, ch 635, § 1; italics added).

In this regard, plaintiff had alleged only facial scarring, not disfigurement. The scarring is never further described, and certainly is not described in any terms satisfying even a broad construction of "disfigurement." Moreover, in order to satisfy section 11, the cognitive injuries must constitute a "permanent total disability." Although the complaint and bill of particulars allege the permanency of the injuries, total disability is not alleged (*see, Brownstein v LeCroy Corp.*, 178 Misc 2d 197, 199 ["(t)he plain meaning of the statute is clear, the loss of use

must be 'permanent and total' "; bill of particulars set forth only a fractured wrist, and not total and permanent loss of appendage's use]). Plaintiff's affidavit in support of his summary judgment motion fails to allege the injuries explicitly required by section 11. Plaintiff had submitted an MRI report and a neuropsychological evaluation in support of his complaint. Even if we were to consider this evidence to clarify the pleadings, Mount Sinai still cannot meet the statutory requirements. The medical evidence indicates periods of disorientation and some dementia, particularly in short-term memory, although plaintiff's long-term memory seems intact. Notably, the evaluation indicated that plaintiff is "physically independent and ambulatory" and during his evaluation seemed cognitively logical and goal oriented, albeit with some apparent slowness of speech and some distractability. However, his cognitive abilities did not seem especially inconsistent with his academic history, although he underperformed on some neurological tests, presumably as a consequence of trauma to the head. Nevertheless, this does not, on its face, make out permanent and total disability. Moreover, other indications in that evaluation undermine rather than underscore the permanence and totality of the injuries. Finally, insofar as discovery has been completed, it cannot be said that Mount Sinai lacked an opportunity to adduce adequate evidence in support of its present position.

Mount Sinai also contends that section 11 is unconstitutional on due process and equal protection grounds because, its effect being merely to shift risk and associated premium costs from employers to owners, it is not rationally related to the stated legislative objective of reducing liability insurance premiums and fostering a more favorable business climate. However, while the amendment may be contrary to the interest of property owners, and there may have been competing policy considerations, it, nevertheless, does tend to re-create the conditions originally developed by the workers' compensation system. Employing a "relaxed standard" in recognition of the amendment's presumptive validity (*Massachusetts Bd. of Retirement v Murgia*, 427 US 307, 314), we cannot find the amendment to be unreasonable in this sense. We are guided by the principle that " '[a]ssuming that there were other effective methods by which to accomplish the same end, this court should not substitute its judgment for that of the Legislature in determining the particular method to meet a given need' " (*Montgomery v Daniels*, 38 NY2d 41, 56, quoting *Matter of*

*Taylor v Sise*, 33 NY2d 357, 365). Moreover, "[n]or is it necessary to conclude that [the amendment] will surely accomplish the ends sought to be achieved, for 'only time will tell whether the course pursued will prove effective or will fail'" (*Montgomery v Daniels, supra*, at 56, quoting *People v Broadie*, 37 NY2d 100, 118, *cert denied* 423 US 950).

We have considered and rejected Mount Sinai's remaining arguments.

Accordingly, the orders of Supreme Court, New York County (Harold Tompkins, J.), entered on or about November 11 and December 10, 1998, granting plaintiff's motion for summary judgment against Mount Sinai on the issue of Labor Law § 240 (1) liability, and granting Universal's cross motion for summary judgment dismissing the third-party complaint pursuant to Workers' Compensation Law § 11, should be affirmed, without costs.

ROSENBERGER, J. P., WILLIAMS, MAZZARELLI and SAXE, JJ., concur.

Orders, Supreme Court, New York County, entered on or about November 11 and December 10, 1998, affirmed, without costs.